```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
STEWART BIRCH,

                              Plaintiff,           06-CV-6497T

            v.                                     DECISION
                                                   and ORDER
PIONEER CREDIT RECOVERY, INC.,

                              Defendant.
_____
```

## INTRODUCTION

Plaintiff Stewart Birch ("plaintiff") brings this action against Pioneer Credit Recovery, Inc., ("defendant" and/or "Pioneer"), alleging that defendant violated the Privacy Act under 5 U.S.C. § 552a and that Pioneer committed a prima facie tort against plaintiff. See Complaint, ¶¶ 51-74. Defendant moves to dismiss plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), alleging that plaintiff has failed to state a claim upon which relief may be granted with respect to the violation of the Privacy Act claim and that defendant is entitled to a dismissal as a matter of law. Upon dismissal of plaintiff's Privacy Act claim, defendant asks the court to decline the exercise of supplemental jurisdiction over plaintiff's prima facie tort claim and dismiss that claim. Alternatively, defendant argues that plaintiff's prima facie tort claim should also be dismissed because it fails to allege facts sufficient to state a cause of action and is barred by New York's prohibition against at-will employees bringing wrongful discharge claims. For the reasons set forth below, defendant's motion to dismiss plaintiff's Complaint is granted as to the first cause of action with prejudice and the second cause of action is also dismissed since this

Court declines to exercise pendent jurisdiction over plaintiff's prima facie tort claim.

## BACKGROUND

### I. Facts

Plaintiff was employed by Pioneer as a debt collector from March 11, 2002 until March 24, 2006. See Complaint, ¶ 5. Pioneer is a third-party collection agency that provides collection services for a number of public and private clients, which include the Internal Revenue Service ("IRS"), U.S. Department of Education ("Education Dept.") and the U.S. Treasury Department ("Treasury Dept."). See Grasso Dec. Ex. C.[1] Defendant is a Delaware Corporation and a wholly-owned subsidiary of SLM Corporation ("SLM"). Id. SLM is a fortune 500 company and is publicly traded on the New York Stock Exchange. See Grasso Dec. Ex. B. Originally, SLM was chartered as a U.S. government-sponsored enterprise. Id. In 2004, however, SLM dissolved its government charter and eliminated its corporate ties to the federal government. Id.

During plaintiff's employment, Pioneer had contracts with the IRS, Education Dept. and Treasury Dept. to perform debt collection on behalf of those agencies. See Complaint, ¶ 7. Pursuant to the contracts with the above-mentioned agencies, defendant is required to have all of its employees, including plaintiff, fill out security clearance packages in order to be qualified to collect debts on behalf of those three agencies. Id., ¶¶ 9, 12. According to plaintiff, the information requested in the security packages were of a highly private and personal nature. Id., ¶¶

---

[1] "Grasso Dec." refers to the Declaration of James R. Grasso submitted in support of Pioneer's motion.

10, 21. Pioneer obtained completed security clearance packages from plaintiff and submitted them to the IRS, Education Dept. and Treasury Dept. Id., ¶¶ 11-12, 14.[2]

In March 2006, plaintiff was designated a "systems administrator" for defendant's IRS contract and pursuant to the contract, he filled out an IRS security package, which he gave to Pioneer to be turned over to the IRS. Id., ¶¶ 14-15. According to plaintiff, it was at this time that he learned that defendant was copying the security clearance packages and keeping a permanent record of them in the employees personnel files. Id., ¶¶ 16-17. Plaintiff claims that he did not give his consent to this practice, informed defendant many times that his privacy was being violated, and demanded that all copies of his security packages kept by Pioneer be returned to him. See Complaint. On June 14, 2006, plaintiff received a copy of the Education Dept.'s security package, but did not receive the Treasury Dept.'s package. Id., ¶47. Further, plaintiff asserts that upon inspection of the copy of Education Dept.'s security package, the dates on the package have been changed and his initials have been forged next to each of those changes. Id., ¶ 47. Pioneer argues that it did not retain a copy of plaintiff's Treasury Dept. security clearance package and denies that it altered the signature dates on all the forms contained in plaintiff's Education Dept. security clearance package as alleged by plaintiff in his complaint.

---

[2] Defendant initially retained copies of plaintiff's IRS and Education Dept. security clearance packages in a secure, locked file cabinet. However, defendant released those copies to plaintiff following his resignation. Defendant claims it no longer retains any copies of those security clearance packages. See Complaint ¶¶ 25, 47.

## II. Procedural History

Plaintiff filed his complaint on October 5, 2006 alleging that Pioneer violated the Privacy Act under 5 U.S.C. §§ 552a and committed a prima facie tort under New York State law. See Complaint. In lieu of an answer, Pioneer filed a motion to dismiss plaintiff's complaint for failure to state a cause of action under Fed. R. Civ. P. 12(b)(6), and for lack of subject matter jurisdiction under Rule 12(b)(1). Plaintiff opposed defendant's motion, and further moved this Court for leave to amend his Complaint under Fed. R. Civ. P. 15(a) as well as Motion for Continuation of Discovery under Fed. R. Civ. P. 56(f). Thereafter, Pioneer filed a reply memorandum of law in further support of its motion to dismiss plaintiff's complaint.

## DISCUSSION

### I. Defendant's Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of the complaint where the plaintiff has failed to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion, the court must ascertain, after presuming all factual allegations in the pleading to be true and viewing them in the light most favorable to the plaintiff, whether or not the plaintiff has stated any valid ground for relief. Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d Cir. 1993), cert. denied, 513 U.S. 1014, 115 S.Ct. 572 (1994). The court may grant a Rule 12(b)(6) motion only where "`it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Allen v. Westpoint-Pepperell, Inc., 945

F.2d 40, 44 (2d Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## II.  Privacy Act Claim

Defendant alleges that even assuming that the allegations in plaintiff's complaint are true, they do not state a claim against Pioneer under the Privacy Act because defendant is not an "agency" or a "government controlled corporation" as defined in the Privacy Act.[3] In opposition, plaintiff argues that defendant is a "government controlled corporation" based primarily on the "nature" of its contracts with the IRS, Education Dept. and the Treasury Dept.

The controlling issue before this Court is whether Pioneer is a "government controlled corporation," within the meaning of 5 U.S.C. § 552(e).  In determining whether an entity is a government controlled corporation, courts consider various factors including: performance of governmental functions by the entity; presence of substantial government control over the entity's day to day operations; authority of the entity to make and implement decisions; nature of the government's financial involvement with the entity; the existence of a federal charter; and the status of the entity's employees. See Forsham v. Harris, 445 U.S. 169,

---

[3]For purposes of the Privacy Act, the term "agency" is defined by reference to § 552(e), which provides:

"For purposes of this section, the term 'agency' ... includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."

See Shannon v. GE Co., 812 F.Supp. 308, 314-15 (N.D.N.Y. 1993), aff'd, 186 F.3d 186 (2d Cir. 1999) citing Privacy Act of 1974; see also Pennyfeather v. Tessler, 431 F.3d 54, 56 (2d Cir. 2005) ("the private right of civil action created by the Act is specifically limited to actions against agencies of the United States Government. The civil remedy provisions of the [Privacy Act] do not apply against private individuals, state agencies, private entities[.]") quoting Unt v. Aerospace Corp., 765 F.2d 1440, 1447 (9th Cir. 1985) (citations omitted).

180 (1980); see also Pub. Citizen Health Research Group v. Dep't of Health, Educ. and Welfare, 668 F.2d 537 (D.C. Cir. 1981); Ry. Labor Executives' Ass'n v. Consol. Rail Corp., 580 F.Supp. 777, 778-79 (D.D.C. 1984).

### A. Performance of a governmental function

There is no dispute that defendant provides debt-collection services for not only the IRS, Education Dept. and Treasury Dept., but also other private companies. See Grasso Dec. Ex. B. The function of providing debt collection services has always been traditionally performed by private entities, and not the federal government. See Consol. Rail, 580 F.Supp at 778 ("Providing commuter and freight rail service has traditionally been a function carried out by private industry[.]") Therefore, Pioneer does not carry out a government function.

### B. Government control over Pioneer's day to day operations

In deciding whether Pioneer is government controlled, cases place a great deal of weight on whether the government supervises or controls the every day activities of the entity. See Forsham, 445 U.S. at 178; Irwin Mem'l v. Am. Nat'l Red Cross, 640 F.2d 1051, 1056 (9th Cir. 1981) (control must be "extensive, detailed and virtually day-to-day supervision" by the federal government). In this case, it is clear that the federal government exercises no supervision over the day-to-day operations of Pioneer or control its activities. Plaintiff merely alleges that the federal government may control defendant to some unknown extent based on the "nature" of defendant's contracts with the IRS, Education Dept. and Treasury Dept. However, alleging that the federal government may control defendant to some degree because of contractual arrangements

does not satisfy the critical requirement that plaintiff allege and prove that the federal government controls defendant's day-to-day operations to such an extent that it is being virtually operated by the federal government. Moreover, plaintiff acknowledges that defendant is operated by its own management and employees. Further, according to Pioneer's Chief Operating Officer, none of the three federal agencies at issue have any day-to-day involvement or oversight on Pioneer's operations. See Wickline Dec., ¶ 7.[4] Accordingly, the federal government does not exercise day-to-day control over Pioneer.

**C.    Pioneer's Authority to make and implement decisions**

The controlling standard is whether an administrative unit has independent legal authority in the exercise of specific functions. See Ciba-Geigy Corp. v. Mathews, 428 F.Supp. 523, 527-528 (S.D.N.Y. 1977); Consol. Rail, 580 F.Supp. at 779 (To have authority to make decisions means that alleged government controlled corporation has independent legal authority to make decisions for agency that allegedly controls it). Here, there are no allegations in the complaint that defendant has any such authority and there is no factual basis for any such allegation. Pioneer does not have legal authority to make decisions for any of the agencies (IRS, Education Dept., and Treasury Dept.) with which it contracts.

**D.    Government's financial involvement with Pioneer**

It is well established that merely having a contractual relationship with the federal government that includes government oversight and requires

---

[4] "Wickline Dec." refers to the Declaration of Harold Wickline submitted in support of Pioneer's Reply Memorandum.

compliance with regulations does not establish the degree of control necessary for an entity to be considered a government controlled corporation. See St. Michael's Convalescent Hosp. v. State of Cal., 643 F.2d 1369, 1373-74 (9th Cir. 1981). As stated in the St. Michael's case, federal funding reaches countless entities, both private and public, and to ensure that such funding is properly expended, extensive federal regulations must be complied with. Nevertheless, compliance with such regulations does not convert a company into a government controlled agency. See id.; see also Pub. Citizen Health, 668 F.2d at 543-44 (private foundation under contract with federal agency not a government agency; Ciba-Geigy, 428 F.Supp. at 526-28. Here, the fact that defendant receives monies from the federal government under contracts to perform debt collection services does not automatically render the defendant a government controlled company. Accordingly, other than payments received for debt-collection service performed pursuant to Pioneer's contracts with the three federal agencies, Pioneer does not receive any federal funds. Thus, the government's financial involvement with defendant does not render it a government controlled company.

   **E.   Existence of a federal charter**

There is no dispute that defendant is not federally chartered and is a wholly-owned subsidiary of SLM. Since 2004 SLM has had no ties to the federal government. In addition, SLM corporation and its subsidiaries are not sponsored by agencies of the United States. See Grasso Dec. Ex. B., p. 4 footnote. The legislative history for the Privacy Act indicates that Congress did not "intend to include corporations which receive appropriated funds but are neither chartered by the Federal Government nor controlled by it" in the definition of a government controlled corporation. See Ehm v.

Nat'l R.R. Passenger Corp., 732 F.2d 1250 (5th Cir. 1984),[5] citing S. Con. Rep. No. 1200, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Ad. News 6285, 6293.

**F.    Status of Pioneer's employees**

To ascertain whether an entity's employees are in reality federal employees, one factor to consider is whether the employees are subject to civil service regulations. See Consol. Rail, 580 F.Supp. at 779. Here, plaintiff does not allege that any of the Pioneer employees are subject to civil service regulations since none of them are federal employees.

In reviewing all the relevant factors cumulatively, defendant cannot be considered a federal agency subject to the Privacy Act. Clearly, defendant lacks the attributes that have been considered significant in determining whether the defendant is a government-controlled agency under the Privacy Act. Therefore, plaintiff's Privacy Act claims are dismissed as a matter of law for failure to state a claim upon which relief can be granted.

---

[5] In Ehm, the Circuit Court found that Amtrak was not a government controlled corporation despite federal involvement and control that far exceeds what is present in this case. Similar to this case, Amtrak's employees were not federal employees, it was not a federally chartered entity and it had no authority in law to make decisions for any federal agency. However, the facts in Ehm demonstrated that the federal government controlled the appointment of seven of Amtrak's nine director's and Amtrak is subject to stringent federal audit and reporting requirements. Despite the government having authority to appoint a majority of Amtrak's directors and its direct financial oversight, the Court found that such control did not constitute day-to-day supervision required for the Privacy Act to apply. With respect to the extensive federal oversight of Amtrak's finances, the Court of Appeals stated it did not think that "Amtrak's government accountability to the federal government constitutes government control over Amtrak within the meaning of [the Privacy Act]. Rather, this accountability is necessary for Congress to monitor the accomplishment of its announced goal ... that Amtrak make 'the most cost-effective use of employees, facilities and real estate,' and 'minimize Federal subsidies.'" Id. at 1255; see also Unt, 765 F.2d at 1440 (Circuit Court held that the mere fact that Aerospace received federal funds under its contract with the Air Force and that its conduct was regulated by the government was not enough for the Privacy Act to apply to it).

### III.  **Pendent Jurisdiction and the State Law Claim**

Dismissal of plaintiff's federal claim raises the question of whether the state-law claim for prima facie tort should be dismissed without prejudice permitting it to be pursued in state court. The Court has the discretion to dismiss plaintiff's pendent state law claim for lack of subject matter jurisdiction when it dismisses all of the federal question claims in a complaint. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, (1966); Cahill v. Arthur Andersen & Co., 659 F.Supp. 1115, 1128 (S.D.N.Y.1986), aff'd, 822 F.2d 14 (2d Cir.1987).

In the interest of comity, the Second Circuit instructs that "absent exceptional circumstances," where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should "abstain from exercising pendent jurisdiction." Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir.1986), cert. denied, 476 U.S. 1159 (1986); see also Klein & Co. Futures, Inc. v. Bd. of Trade of the City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (Where federal claims are eliminated in the early stages of litigation courts should generally decline to exercise supplemental jurisdiction over remaining state claims) citing Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006). Judge Friendly has advised that "[i]f it appears that the federal claims ... could be disposed of on summary judgment ..., the court should refrain from exercising pendent jurisdiction [over the state claims] absent exceptional circumstances." See Kavit v. A.L. Stamm & Co., 491 F.2d 1176, 1180 (2d Cir.1974).

Factors to be considered by the Court include (1) the length of time the matter has been pending before the federal court;  (2) the proximity of the trial date;  and (3) the predominance of issues of federal, as

opposed to local concern. See McLearn v. Cowen & Co., 660 F.2d 845 (2d Cir.1981) (no federal district court jurisdiction where no trial held, no substantial investment of time and energy on state law issue, and state claim was not closely tied to questions of federal policy); see also Nolan v. Meyer, 520 F.2d 1276, 1280 (2d Cir.), cert. denied, 423 U.S. 1034 (1975) (Where federal claims are disposed of well before trial, it is appropriate for the pendent state claims to be dismissed as well). Because this case is in its initial stages, no trial date has been set, and the state claim does not involve questions of federal policy, the Court will dismiss plaintiff's state law claim without prejudice with leave to re-file in state court.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss the first cause of action is hereby granted and accordingly Count I (Privacy Act claim) is dismissed with prejudice. As to the second cause of action relating to the pendent state claim for prima facie tort, this Court declines to retain jurisdiction over this claim and it is dismissed without prejudice, with leave to re-file in state court. Accordingly, plaintiff's motion for leave to amend his Complaint under Fed. R. Civ. P. 15(a) and motion for Continuation of Discovery under Fed. R. Civ. P. 56(f) are dismissed as moot.

ALL OF THE ABOVE IS SO ORDERED.

                                s/Michael A. Telesca
                                   MICHAEL A. TELESCA
                                United States District Judge

Dated:    Rochester, New York
            June 8, 2007